**ZDANCEWICZ LAW FIRM, PLC**
Post Office Box 51826
Phoenix, Arizona 85076
Phone: (602) 900-0890
Fax: (602) 265-4391
Notice@ZLawAZ.com
Michael Zdancewicz - 12426
Attorney for Ally Capital Corp.

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>Anthony Leo Montez,<br><br>Debtor. | Case No.: 4:24-bk-09671-BMW<br><br>**Chapter 13 Proceeding**<br><br>**RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR DISCOVERY (DOCKET 244)**<br><br>**Property Description:**<br>2021 Ram 3500 Mega Cab Limited Pickup 4D 6 1/3 ft VIN 3C63RRPL6MG537343 |

Ally Capital Corp. ("**Creditor**"), by and through the undersigned attorneys, hereby responds to the *Debtor's Motion for Discovery and Production of Documents from Ally Capital Corporation* (the "**Debtor's Motion**") dated 21 August 2026 at docket 244. The Debtor's Motion should be denied because the Debtor has failed to identify any statutory or procedural basis authorizing the requested discovery, has failed to demonstrate good cause for the relief requested, and seeks information that is irrelevant to any pending issues[1] before

[1] The only issues presently at issue between the Debtor and Creditor concern the valuation of the collateral and the determination of the applicable interest rate under the Chapter 13 plan.

the Court. The discovery is directed toward matters that have already been adjudicated and resolved by prior orders of this Court. Consequently, the Motion constitutes an improper attempt to relitigate issues that are no longer subject to dispute. The following Memorandum of Points and Authorities supports this Response.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. ARGUMENT

#### A. The Debtor Has Failed to Cite Any Authority Permitting the Requested Discovery.

The Motion does not identify any provision of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, or local rules that authorize the requested discovery. Discovery in bankruptcy proceedings is governed by specific procedural rules. A party seeking court-ordered discovery bears the burden of establishing the legal basis for such relief. The Debtor's Motion contains no citation to any authority authorizing the requested discovery and therefore fails to establish entitlement to the relief sought. A motion unsupported by legal authority is insufficient as a matter of law and should be denied on that basis alone.

#### B. The Requested Discovery Is Not Relevant to Any Pending Matter.

Discovery is limited to matters relevant to a party's claim or defense and proportional to the needs of the case. The Debtor seeks discovery concerning issues that this Court has already considered and resolved. Because the Court has already ruled on those issues, the

information sought cannot affect the resolution of any pending controversy before the Court. Discovery relating solely to decided matters serves no legitimate purpose and would not lead to the resolution of any live dispute. Absent a showing that the requested information bears on an issue presently before the Court, the Motion fails to establish the requisite relevance for discovery.

Attached to this Response as Exhibit 1 are documents which have already been disclosed to the Debtor and bear on the remaining two issues (value and interest) in this case:

1. The Contract.
2. The Electronic Lien Filing receipt.
3. The Kelley Blue Book valuation filled with the Motion for Relief from Stay and the JD Power valuation supporting Creditor's Plan Objection.
4. A payment history for the loan.
5. The repossession Judgment entered by the Pinal County Superior Court.

**C. The Motion Is an Improper Attempt to Relitigate Issues Previously Decided by the Court.**

The requested discovery appears aimed at challenging, revisiting, or undermining prior rulings of this Court. As said by the Debtor:

> The requested documents are directed principally to the underlying accounting and transactional records, the records reviewed or relied upon by Ashley Graf, documents supporting Proof of Claim No. 8, documents concerning ownership and the asserted right to enforce the obligation, and records concerning

> the Form 1099-C and Notice of Lien Release previously addressed by Ally.

Debtor's Motion, Docket 244, page 2 of 8.

Once a matter has been adjudicated, a litigant should not use discovery as a vehicle to reopen issues that have already been decided. If the Debtor disagreed with the Court's prior rulings, the appropriate remedy was to appeal. Discovery is not a substitute for either procedure.

Permitting discovery into matters already resolved would undermine the finality of the Court's orders and unnecessarily increase the costs and burdens of the bankruptcy process.

**D. The Requested Discovery Would Impose Unnecessary Burden and Expense.**

Because the requested discovery concerns matters that have already been adjudicated, requiring Creditor to respond would impose expense and burden without any corresponding benefit to the administration of the bankruptcy case.

The burden and expense outweigh any likely benefit, particularly where the requested information is irrelevant or cumulative. Moreover, the documents are produced with this Response. Here, any burden imposed by additional requested discovery is unjustified because the information sought pertains exclusively to issues already decided by the Court.

/ / /

**E. The Motion Fails to Demonstrate Good Cause.**

To the extent court authorization is required for the requested discovery, the Debtor has not established good cause. The Motion contains no explanation of how the discovery would affect any pending issue, no showing that the information is necessary, and no explanation why the requested relief is warranted notwithstanding the Court's prior rulings. Without such a showing, there is no basis for the extraordinary relief requested.

**F. The Debtor Rejected a Practical Resolution and Instead Pursued Unnecessary Discovery**.

On **6 August 2026**, the Creditor attempted to resolve the parties' dispute consensually by offering to enter a Stipulation for Plan Treatment that would have addressed and resolved the value[2] and interest issues. The proposed stipulation provided a straightforward mechanism to avoid further litigation, reduce administrative expenses, and facilitate the efficient administration of this Chapter 13 case. Despite this good-faith effort to reach a mutually acceptable resolution, the Debtor rejected the proposed stipulation. The Debtor responded with Exhibit 2. Creditor rejected Debtor's revisions.

Rather than pursuing a consensual resolution, the Debtor elected to escalate the matter by seeking broad discovery concerning issues that have already been addressed and resolved by the Court. The Motion therefore appears designed not to obtain information relevant to

---

[2] The Debtor stated at docket 209 that he is willing to value the collateral at $52,000 based on Kelley Blue Book Valuation evidence. ("Debtor is willing to amend the proposed secured value of Ally's collateral to $52,000.00, consistent with Debtor's submitted Kelley Blue Book valuation evidence."). Creditor in the stipulation agreed to the $52,000 valuation and offered the 9% interest.

any pending controversy, but instead to continue litigating matters that are no longer in dispute. The Debtor's refusal to engage in a reasonable resolution, coupled with the pursuit of discovery directed at previously adjudicated issues, further demonstrates the lack of necessity, relevance, and good cause supporting the requested relief. Under these circumstances, the Motion should be denied.

## CONCLUSION

For the foregoing reasons, Creditor requests the court deny Debtor's Motion.

Dated: 8 September 2026.

**Zdancewicz Law Firm, PLC**

/s/ Michael Zdancewicz (012426)
Michael Zdancewicz
Post Office Box 51826
Phoenix, Arizona 85076
Attorney for Ally Capital Corp.

## Certificate of Service

I certify that on September 8, 2026, a true and correct copy of the above and foregoing was served upon the following parties by regular first-class mail postage prepaid:

Anthony Leo Montez
42080 W Anne Lane
Maricopa AZ 85138
**By United States Mail**

**All other CM/ECF system registered recipients**
**CM/ECF**

By: __Michael Zdancewicz__

# Exhibit 1

[redacted]

# LAW 553-AZ-ARB-eps-14 7/20

DEAL [redacted]
STOCK# [redacted]
CUS [redacted]
FOR [redacted]

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| ANTHONY MONTEZ<br>42080 W ANNE LANE<br>MARICOPA, AZ 85138<br>COUNTY: MARICOPA<br>[redacted] | DEANNA MARIE RUIZ<br>42080 W ANNE LANE<br>MARICOPA, AZ 85138<br>COUNTY: MARICOPA<br>[redacted] | LARRY MILLER DODGE<br>8665 W BELL ROAD<br>PEORIA, AZ 85382-3704 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2021 | RAM 3500 | 4265 | 3C63RRPL6MG537343 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 9000.00 is |
|---|---|---|---|---|
| 6.59 % | $ 21140.42 | $ 93522.58 | $ 114663.00 | $ 123663.00 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | $ 1528.84 | MONTHLY beginning 07/01/2021 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

### WARRANTIES

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described above) or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

### FOR USED VEHICLES ONLY

**The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.**

**ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN COMPRADOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y QUE USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO BAJO ESTOS TÉRMINOS:**

1. N/A 2. N/A 3. N/A

X N/A N/A X N/A N/A
**Buyer Signs (Date) Co-Buyer Signs (Date)**

**SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
(a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon delivery of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with this contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the vehicle, including attorney's fees, and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage in the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control of and until the vehicle is returned to us.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X ______ Co-Buyer Signs X ______

[redacted]

Buyer Initials X ______ Co-Buyer Initials X ______ 05/17/2021 02:40 pm





Exhibit A

[redacted]

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price

| | | |
|---|---|---|
| A Cash Price of Motor Vehicle (including accessories, services) | $ 84399.00 | |
| B Sales Tax | $ 7155.30 | |
| C Prior Credit or Lease Balance paid to N/A | $ 0.00 | |
| D Other Documentary Fee | $ 499.00 | |
| E Other N/A | $ N/A | |
| F Other N/A | $ N/A | |
| G Other N/A | $ N/A | |
| H Other N/A | $ N/A | |
| Total Cash Price (A through H) | | $ 92053.30 (1) |

2 Total Downpayment =

Trade-In N/A
(Year) (Make) (Model)

| | | |
|---|---|---|
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller to N/A | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ 9000.00 | |
| + Other | $ N/A | |
| + Other N/A | $ N/A | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C, above) | | $ 9000.00 (2) |

3 Unpaid Balance of Cash Price (1 minus 2) $ 83053.30 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts):

| | | | |
|---|---|---|---|
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | | |
| Life | $ N/A | | |
| Disability | $ N/A | $ N/A | |
| B Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A | |
| C Optional Gap Contract | | $ N/A | |
| D Official Fees Paid to Government Agencies | | $ N/A | |
| E Government Taxes Not Included in Cash Price | | $ N/A | |
| F Government License and/or Registration Fees N/A | | | |
| REG-PSF / Lieu Fee / Postage Fee | | $ 1577.28 | |
| G Government Certificate of Title Fees | | $ 4.00 | |
| H Other Charges (Seller must identify who is paid and describe purpose) | | | |
| to TOTAL CARE AUTO VSC | for Ext Service Contract | $ 3588.00 | |
| to TOTAL CARE AUTO | for TCA T&W | $ 1127.00 | |
| to N/A | for N/A | $ N/A | |
| to TOTAL CARE AUTO | for MAINT CONTRACT | $ 230.00 | |
| to LARRY MILLER DODGE | for Tire Fee | $ 5.00 | |
| to TOTAL CARE AUTO | for DRIVE PUR | $ 499.00 | |
| to TOTAL AUTO CARE | for KEY REPLACEMENT | $ 700.00 | |
| to TOTAL CARE AUTO | for VTA | $ 499.00 | |
| to TOTAL CARE AUTO | for APPEARANCE PROTECTION | $ 1540.00 | |
| to TOTAL CARE AUTO | for PAINTLESS DENT REPAIR | $ 700.00 | |
| to N/A | for N/A | $ N/A | |
| to N/A | for N/A | $ N/A | |
| to N/A | for N/A | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | | $ 10469.28 (4) |

5 Amount Financed (3 + 4) $ 93522.58 (5)

If the "Amount Financed" exceeds $58,300 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance".

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS N/A

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

☐ N/A (Type of Insurance) N/A (Term)

Premium $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

☐ N/A (Type of Insurance) N/A (Term)

Premium $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A — Buyer Signature; N/A — Date

X N/A — Co-Buyer Signature; N/A — Date

**Returned Check Charge:** You agree to pay a charge of $25.00, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.

N/A
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X N/A

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/365th of a year (or 1/366th in a leap year).

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.** You give us a security interest in:

- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:

- You do not pay any payment on time;
- You give us false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **Debtor's Liability for Failure to Return Vehicle:** If you are in default, we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1.5 years in prison and a $150,000 fine.

d. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.

e. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

f. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

g. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

h. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**5. SERVICING AND COLLECTION CONTACTS**

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**6. APPLICABLE LAW**

Federal law and the law of the state of Arizona apply to this contract.

## GUARANTY

The undersigned, jointly and severally, guarantee payment of all amounts owing under this contract and the payment upon demand of the entire amount owing on this contract in the event of default in payment by Buyer named therein. The undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 *et seq.* The undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

| DATED AT | GUARANTOR |
|---|---|
| N/A | N/A |
| N/A | N/A |

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor, and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

| Date | Spouse of the Guarantor |
|---|---|
| N/A | N/A |

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

☐ **IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO** N/A .

**NO COOLING OFF PERIOD**

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X Co-Buyer Signs X

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**NOTICE TO THE BUYER: (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.**

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 4, BEFORE SIGNING BELOW.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

**ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**The Arizona Department of Insurance and Financial Institutions regulates the Seller and can be contacted at 100 N 15th Avenue, Suite 261, Phoenix, AZ [redacted] if you have any complaints concerning this contract.**

X ______ 05/17/2021
**Buyer Signs** **Date**

ANTHONY MONTEZ
**Buyer Printed Name**

X LARRY MILLER DODGE 05/17/2021
**Seller Signs** **Date**

X ______ 05/17/2021
**Co-Buyer Signs** **Date**

DEANNA MARIE RUIZ
**Co-Buyer Printed Name**

By X ______ BUSINESS MGR
**Title**

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A Title N/A

**SEE THE REST OF THIS CONTRACT FOR OTHER IMPORTANT TERMS AND AGREEMENTS.**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A Date N/A Address N/A

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse

Seller

By X LARRY MILLER DODGE Title BUS MGR

**CONFIRMATION OF ASSIGNMENT OF RETAIL INSTALLMENT SALE CONTRACT**

WHEREAS, on or May 17th, 2021, ANTHONY MONTEZ AND DEANNA MARIE RUIZ ("Customer") entered into that certain Retail Installment Sale Contract ("Contract") with LARRY MILLER DODGE ("Dealership") for the sale and financing of a 2021 RAM 3500, VIN #3C63RRPL6MG537343 ("Vehicle"); and

WHEREAS, the Dealership thereafter sold and assigned its interest in the Contract to Ally Financial Inc. and

THEREAFTER, Ally Financial Inc. did assign all of its right, title and interest in and to the Contract to Ally Bank aka Ally Capital Corp. aka Ally Bank Corp. effective as of the date of the Contract.

AIS PORTFOLIO SERVICES, LLC, AS AUTHORIZED AGENT FOR ALLY FINANCIAL INC.

By: Paul Tangen
*(Signature)*

Name: Paul Tangen
*(Print Name of Signatory)*

Title: Its Authorized Agent

Date: 12/3/24

PDP ELECTRONIC TITLE DOCUMENT

ELT*AZ : ELT - ARIZONA
Title #: A004322578 Title Type :
Issue Date: 6/04/2021 Lic/Tag/Control #:

VIN . . . . . . . : 3C63RRPL6MG537343

Vehicle Info. . : 2021 RAM 3500 3500

Odometer Reading : 4265
Date . :
Status :

Owner Information . : ANTHONY MONTEZ
Co-Owner . . . . . . : DEANNA MARIE RUIZ

Owner address . . . : 42080 W ANNE LN

MARICOPA
AZ 851388637

Lienholder Information: ALLY FINANCIAL
PO BOX 8127

COCKEYSVILLE
MD 210308127

2nd Lienholder Name :

ELT Sent Date . . . . : 5/14/2021
Lien Type . . . . . . :
Owner Driver License# :

Brand code . . . . :

Release name . . . :
Release address 1 :
Rel City/State/Zip : ,

# 2021 Ram 3500 Mega Cab Pricing Report

**Style**: Limited Pickup 4D 6 1/3 ft

**Mileage**: 58,015

**KBB.com Consumer Rating**: 3.3/5

## Vehicle Highlights

Fuel Economy: N/A

Drivetrain: 4WD

Transmission: Automatic, 6-Spd HD

Engine: 6-Cyl, HO, Turbo Diesel, 6.7 Liter

Country of Assembly: Mexico

Country of Origin: United States

EPA Class: Standard Pickup Trucks

Max Seating: 5

Doors: 4

Body Style: Pickup

# Sell to Private Party

Private Party Range
**$58,895 - $64,960**

Private Party Value
**$61,928**




Valid for **ZIP code 85701** through **12/03/2024**

# Your Configured Options

Our pre-selected options, based on typical equipment for this car.

✓ Options that you added while configuring this car.

### Exterior Color
- ✓ Gray

### Drivetrain
- 4WD

### Transmission
- ✓ Automatic, 6-Spd HD

### Engine
- ✓ 6-Cyl, HO, Turbo Diesel, 6.7 Liter

### Braking and Traction
- ABS (4-Wheel)
- Hill Start Assist
- Electronic Stability Control
- Traction Control

### Comfort and Convenience
- Air Conditioning
- Alarm System
- ✓ Adaptive Cruise Control
- Keyless Entry
- KEYLESS-GO
- Power Door Locks
- Power Windows
- Power Sliding Rear Window

### Wheels and Tires
- Oversized Premium Wheels 20"+
- ✓ Dual Rear Wheels

### Safety and Security
- Backup Camera
- Dual Air Bags
- F&R Head Curtain Air Bags
- F&R ParkSense Park Assist
- ✓ Lane Keep Assist
- ✓ Surround View Camera
- Side Air Bags

### Cargo and Towing
- Bed Liner
- Towing Pkg

### Entertainment and Instrumentation
- Bluetooth Wireless
- Navigation System
- SiriusXM Satellite
- Uconnect
- AM/FM/HD Radio

### Lighting
- Daytime Running Lights
- LED Headlamps

### Exterior
- Fog Lights
- Running Boards

### Steering
- Power Steering
- Tilt Wheel

### Accessory Packages
- ✓ Limited Level 1
- Blind-Spot Alert
- ✓ Night Edition

### Roof and Glass
- ✓ Power Sun Roof

### Seats
- Dual Power Seats
- Heated & Ventilated Seats
- Leather

# Glossary of Terms

**Kelley Blue Book® Trade-In Value** - This is the amount you can expect to receive when you trade in your car to a dealer. This value is determined based on the style, condition, mileage and options indicated.

**Trade-In Range** - The Trade-In Range is Kelley Blue Book's estimate of what you can reasonably expect to receive this week based on the style, condition, mileage and options of your vehicle when you trade it in to a dealer. However, every dealer is dierent and values are not guaranteed.

## Tip:

**It's crucial to know your car's true condition when you sell it, so that you can price it appropriately. Consider having your mechanic give you an objective report.**

**Kelley Blue Book® Private Party Value** - This is the starting point for negotiation of a used-car sale between a private buyer and seller. This is an "as is" value that does not include any warranties. The nal price depends on the car's actual condition and local market factors.

**Private Party Range** - The Private Party Range is Kelley Blue Book's estimate of what you can reasonably expect to receive this week for a vehicle with stated mileage in the selected condition and configured with your selected options, excluding taxes, title and fees when selling to a private party.

**Excellent Condition** - 3% of all cars we value. This car looks new and is in excellent mechanical condition. It has never had paint or bodywork and has an interior and body free of wear and visible defects. The car is rust-free and does not need reconditioning. Its clean engine compartment is free of fluid leaks. It also has a clean title history, has complete and verifiable service records and will pass safety and smog inspection.

**Very Good Condition** - 23% of all cars we value. This car has minor wear or visible defects on the body and interior but is in excellent mechanical condition, requiring only minimal reconditioning. It has little to no paint and bodywork and is free of rust. Its clean engine compartment is free of fluid leaks. The tires match and have 75% or more of tread. It also has a clean title history, with most service records available, and will pass safety and smog inspection.

**Good Condition** - 54% of all cars we value. This car is free of major mechanical problems but may need some reconditioning. Its paint and bodywork may require minor touch-ups, with repairable cosmetic defects, and its engine compartment may have minor leaks. There are minor body scratches or dings and minor interior blemishes, but no rust. The tires match and have 50% or more of tread. It also has a clean title history, with some service records available, and will pass safety and smog inspection.

**Fair Condition** - 18% of all cars we value. This car has some mechanical or cosmetic defects and needs servicing, but is still in safe running condition and has a clean title history. The paint, body and/or interior may need professional servicing. The tires may need replacing and there may be some repairable rust damage.

© 1995-2024 Kelley Blue Book Co.®, Inc. All rights reserved.

© 2024 Kelley Blue Book Co., Inc. All rights reserved. 12/3/2024-12/3/2024 Edition for AZ 85701. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from

Payment History

| Date | Description | Payment due | Payment made | Balance |
|---|---|---|---|---|
| 5/17/2021 | Cash down Payment_F | 9000.00 | 0.00 | 9000.00 |
| 5/17/2021 | Receipt - paid via dealer | 0.00 | 9000.00 | 0.00 |
| 7/1/2021 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 7/1/2021 | Repayment | 1528.84 | 0.00 | 3057.68 |
| 7/1/2021 | Repayment | 0.00 | 1528.84 | 1528.84 |
| 7/1/2021 | Repayment | 0.00 | 1528.84 | 0.00 |
| 7/15/2021 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 7/15/2021 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 8/8/2021 | Receipt - AAOS one time pay | 0.00 | 1528.84 | -1528.84 |
| 8/15/2021 | Repayment | 1528.84 | 0.00 | 0.00 |
| 9/15/2021 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 9/19/2021 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 10/15/2021 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 10/15/2021 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 11/14/2021 | Receipt - AAOS one time pay | 0.00 | 1528.84 | -1528.84 |
| 11/15/2021 | Repayment | 1528.84 | 0.00 | 0.00 |
| 12/14/2021 | Receipt - AAOS one time pay | 0.00 | 1528.84 | -1528.84 |
| 12/15/2021 | Repayment | 1528.84 | 0.00 | 0.00 |
| 1/15/2022 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 1/22/2022 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 2/15/2022 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 2/19/2022 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 3/15/2022 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 3/18/2022 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 4/15/2022 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 4/15/2022 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 5/15/2022 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 5/17/2022 | Receipt - AAOS one time pay | 0.00 | 1528.84 | 0.00 |
| 6/15/2022 | Repayment | 1528.84 | 0.00 | 1528.84 |
| 6/26/2022 | Late Charge_Accrued | 76.44 | 0.00 | 1605.28 |
| 7/13/2022 | Receipt - CheckFreePay (debit card) | 0.00 | 1436.55 | 168.73 |
| 7/13/2022 | Receipt - CheckFreePay (debit card) | 0.00 | 96.55 | 72.18 |
| 7/15/2022 | Repayment | 1528.84 | 0.00 | 1601.02 |
| 7/26/2022 | Late Charge_Accrued | 76.23 | 0.00 | 1677.25 |
| 8/15/2022 | Repayment | 1528.84 | 0.00 | 3206.09 |
| 8/16/2022 | Receipt - CheckFreePay (debit card) | 0.00 | 931.50 | 2274.59 |
| 8/16/2022 | Receipt - CheckFreePay (debit card) | 0.00 | 476.50 | 1798.09 |
| 8/25/2022 | Receipt - CheckFreePay (debit card) | 0.00 | 120.00 | 1678.09 |
| 8/26/2022 | Late Charge_Accrued | 76.27 | 0.00 | 1754.36 |
| 8/30/2022 | Transfer | 0.00 | 3.00 | 1751.36 |
| 9/15/2022 | Repayment | 1528.84 | 0.00 | 3280.20 |
| 9/26/2022 | Late Charge_Accrued | 76.44 | 0.00 | 3356.64 |
| 10/15/2022 | Repayment | 1528.84 | 0.00 | 4885.48 |
| 10/26/2022 | Late Charge_Accrued | 76.44 | 0.00 | 4961.92 |
| 11/15/2022 | Repayment | 1528.84 | 0.00 | 6490.76 |

| | | | | |
|---|---|---|---|---|
| 11/26/2022 | Late Charge_Accrued | 76.44 | 0.00 | 6567.20 |
| 12/15/2022 | Repayment | 1528.84 | 0.00 | 8096.04 |
| 12/26/2022 | Late Charge_Accrued | 76.44 | 0.00 | 8172.48 |
| 1/15/2023 | Repayment | 1528.84 | 0.00 | 9701.32 |
| 1/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 9777.76 |
| 2/15/2023 | Repayment | 1528.84 | 0.00 | 11306.60 |
| 2/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 11383.04 |
| 3/15/2023 | Repayment | 1528.84 | 0.00 | 12911.88 |
| 3/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 12988.32 |
| 4/15/2023 | Repayment | 1528.84 | 0.00 | 14517.16 |
| 4/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 14593.60 |
| 5/15/2023 | Repayment | 1528.84 | 0.00 | 16122.44 |
| 5/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 16198.88 |
| 6/15/2023 | Repayment | 1528.84 | 0.00 | 17727.72 |
| 6/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 17804.16 |
| 7/15/2023 | Repayment | 1528.84 | 0.00 | 19333.00 |
| 7/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 19409.44 |
| 8/15/2023 | Repayment | 1528.84 | 0.00 | 20938.28 |
| 8/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 21014.72 |
| 9/15/2023 | Repayment | 1528.84 | 0.00 | 22543.56 |
| 9/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 22620.00 |
| 10/15/2023 | Repayment | 1528.84 | 0.00 | 24148.84 |
| 10/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 24225.28 |
| 11/15/2023 | Repayment | 1528.84 | 0.00 | 25754.12 |
| 11/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 25830.56 |
| 12/15/2023 | Repayment | 1528.84 | 0.00 | 27359.40 |
| 12/26/2023 | Late Charge_Accrued | 76.44 | 0.00 | 27435.84 |
| 1/15/2024 | Repayment | 1528.84 | 0.00 | 28964.68 |
| 1/26/2024 | Late Charge_Accrued | 76.44 | 0.00 | 29041.12 |
| 2/15/2024 | Repayment | 1528.84 | 0.00 | 30569.96 |
| 2/26/2024 | Late Charge_Accrued | 76.44 | 0.00 | 30646.40 |
| 3/15/2024 | Repayment | 1528.84 | 0.00 | 32175.24 |
| 3/26/2024 | Late Charge_Accrued | 76.44 | 0.00 | 32251.68 |
| 4/15/2024 | Repayment | 1528.84 | 0.00 | 33780.52 |
| 4/26/2024 | Late Charge_Accrued | 76.44 | 0.00 | 33856.96 |
| 5/15/2024 | Repayment | 1528.84 | 0.00 | 35385.80 |
| 5/26/2024 | Late Charge_Accrued | 76.44 | 0.00 | 35462.24 |
| 6/15/2024 | Repayment | 1528.84 | 0.00 | 36991.08 |
| 6/26/2024 | Late Charge_Accrued | 76.44 | 0.00 | 37067.52 |
| 7/15/2024 | Repayment | 1528.84 | 0.00 | 38596.36 |
| 8/15/2024 | Repayment | 1528.84 | 0.00 | 40125.20 |
| 9/15/2024 | Repayment | 1528.84 | 0.00 | 41654.04 |
| 10/15/2024 | Repayment | 1528.84 | 0.00 | 43182.88 |
| 11/15/2024 | Repayment | 1528.84 | 0.00 | 44711.72 |

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | ANTHONY LEO MONTEZ |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of ARIZONA (State) |
| Case number | 24-09671-BMW-13 |

Exhibit 1

Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Ally Capital
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g))

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Ally Capital c/o AIS Portfolio Services, LLC | Name: Payment Processing Center |
| Number Street: 4515 N. Santa Fe Ave. Dept. APS | Number Street: PO Box 660618 |
| City: Oklahoma City State: OK ZIP Code: 73118 | City: Dallas State: TX ZIP Code: 75266-0618 |
| Contact phone (800) 495-1578 | Contact phone (800) 495-1578 |
| Contact email ECFNotices@aisinfo.com | Contact email |

Uniform claim identifier (if you use one): ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 4 9 3 4

**7. How much is the claim?** $ 94,745.27*

*Claimant reserves right to amend its claim, including but not limited to, the right to amend for an unsecured deficiency

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Automobile Financing

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☑ Motor vehicle
☐ Other. Describe: VIN:3C63RRPL6MG537343

**To the extent that Debtor received a discharge of this debt in a prior bankruptcy, the underlying indebtedness attaches only to the collateral; Creditor does not seek recourse against the debtor or the estate on previously discharged debt.If Debtor has not received a discharge of this debt in a prior bankruptcy, Creditor reserves the right to amend its claim to seek a deficiency balance,

**Basis for perfection:** Certificate of Title/Lien Notice

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 55,096.00

**Amount of the claim that is secured:** $ 55,096.00

**Amount of the claim that is unsecured:** $ 39,649.27 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 43182.88

**Annual Interest Rate** (when case was filed) 6.589* % * May not reflect rate entitled to under In re Till
☑ Fixed
☐ Variable

Contractual rate - for informational purposes

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ ____________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to property. | ☑ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | $ ________ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507 (a)(7). | $ ________ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C § 507 (a)(4). | $ ________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. §507 (a)(8). | $ ________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507 (a)(5). | $ ________ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507 (a)(__) that applies. | $ ________ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward that debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 01/15/2025
MM / DD / YYYY

/s/ Bhupesh Katheria
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Bhupesh Katheria<br>First Name | Middle Name | Last Name |
| Title | Claims Processor | | |
| Company | AIS Portfolio Services, LLC<br>Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4515 N Santa Fe Ave.<br>Dept. APS<br>Number Street | | |
| | Oklahoma City<br>City | OK<br>State | 73118<br>Zip Code |
| Contact Phone | (888)-455-6662 | Email | ECFNotices@aisinfo.com |

* This form 410 has been modified by AIS in conformance with FED. R. BANKR. P. 9009 and compliance with FED. R. BANKR. P. 3001. This Form 410, as modified, is substantially similar to Official Form 410.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing proof of claim document was served via the Bankruptcy Court's electronic filing and notice system and/or First Class, U.S. Mail, postage prepaid to all parties listed below.

**Case Information**

| Debtor(s) | | | | | |
|---|---|---|---|---|---|
| ANTHONY LEO MONTEZ | | | | | |
| **Street** | | **City** | | **State** | **Zip** |
| 42080 W ANNE LANE | | MARICOPA | | AZ | 85138 |
| **Case Number** | **Court** | | **Chapter** | | **Filing Date** |
| 24-09671-BMW-13 | DISTRICT OF ARIZONA | | 13 | | 11/12/2024 |

Debtor:
ANTHONY LEO MONTEZ
42080 W ANNE LANE
MARICOPA, AZ 85138

Trustee:
DIANNE C KERNS
*Served Electronically*

Non-Filing Debtor:
Deanna M Ruiz
42080 W Anne Ln
Maricopa, AZ 85138

Debtor Attorney:
Pro-Se

By:

/s/ Bhupesh Katheria
Bhupesh Katheria
AIS Portfolio Services, LLC
4515 N Santa Fe Ave.
Oklahoma City, OK 73118

## Auto Proof of Claim Attachment

| | | | |
|---|---|---|---|
| **Name of debtor:** | ANTHONY LEO MONTEZ | **Case number**: | 24-09671-BMW-13 |
| **Name of creditor:** | Ally Capital | **Last four digits of any number you use to identify the debtor's account:** | XXXXX4934 |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

| | | |
|---|---|---|
| 1. **Principal due** | (1) | $80,995.40 |
| 2. **Interest due** | (2) + | $11,839.25 |
| 3. **Total principal and interest due** | (3) | $92,834.65 |

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

| Description | | Amount |
|---|---|---|
| 1. **Late charges:** | (1) | $1,910.62 |
| 2. **Non-sufficient funds (NSF) fees:** | (2) | $0.00 |
| 3. **Other. Specify**: | (3) | $0.00 |
| 4. **Other. Specify**: | (4) | $0.00 |
| 5. **Other. Specify**: | (5) | $0.00 |
| 6. **Total prepetition fees, expenses, and charges.** | (6) | $1,910.62 |

### Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | | 8/30/2022 |
| | Number of installment payments due as of petition date<br>*Note: Partial payments will be reflected to the hundredth decimal place.* | (1) | 27.00 |
| 2. **Amount of installment payments due as of petition date:** | | (2) | $41,272.26 |
| 3. **Calculation of cure amount** | **Add total prepetition fees, expenses, and charges** | + | $1,910.62 |
| | **Subtract total of unapplied funds** (funds received but not credited to account) | - | $0.00 |
| | **Subtract amounts for which debtor is entitled to a refund** | - | $0.00 |
| | **Total amount necessary to cure default as of the petition date** | (3) | $43,182.88 |

[redacted]

# LAW 553-AZ-ARB-eps-14 7/20

DEAL# [redacted]
STOCK# [redacted]
CUST# [redacted]
FORM# [redacted]

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| ANTHONY MONTEZ<br>42080 W ANNE LANE<br>MARICOPA, AZ 85138<br>COUNTY: MARICOPA<br>[redacted] | DEANNA MARIE RUIZ<br>42080 W ANNE LANE<br>MARICOPA, AZ 85138<br>COUNTY: MARICOPA<br>[redacted] | LARRY MILLER DODGE<br>8665 W BELL ROAD<br>PEORIA, AZ 85382-3704 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2021 | RAM 3500 | 4265 | 3C63RRPL6MG537343 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 9000.00 is |
|---|---|---|---|---|
| 6.59 % | $ 21140.42 | $ 93522.58 | $ 114663.00 | $ 123663.00 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | $ 1528.84 | MONTHLY beginning 07/01/2021 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

### WARRANTIES

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described above) or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

### FOR USED VEHICLES ONLY

**The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.**

**ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN COMPRADOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y QUE USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO BAJO ESTOS TÉRMINOS:**

1. N/A 2. N/A 3. N/A

X N/A N/A X N/A N/A
**Buyer Signs (Date) Co-Buyer Signs (Date)**

**SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
(a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon delivery of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with this contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the vehicle, including attorney's fees, and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage in the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control of and until the vehicle is returned to us.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X ______ Co-Buyer Signs X ______

[redacted]
05/17/2021 02:40 pm



Non-Authoritative Copy [redacted]

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| **1** Cash Price | | |
| **A** Cash Price of Motor Vehicle (including accessories, services) | $ 84399.00 | |
| **B** Sales Tax | $ 7155.30 | |
| **C** Prior Credit or Lease Balance paid to N/A | $ 0.00 | |
| **D** Other Documentary Fee | $ 499.00 | |
| **E** Other N/A | $ N/A | |
| **F** Other N/A | $ N/A | |
| **G** Other N/A | $ N/A | |
| **H** Other N/A | $ N/A | |
| Total Cash Price (A through H) | | $ 92053.30 (1) |
| **2** Total Downpayment = | | |
| Trade-In N/A (Year) (Make) (Model) | | |
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller to N/A | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ 9000.00 | |
| + Other | $ N/A | |
| + Other N/A | $ N/A | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C, above) | | $ 9000.00 (2) |
| **3** Unpaid Balance of Cash Price (1 minus 2) | | $ 83053.30 (3) |
| **4** Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
| **A** Cost of Optional Credit Insurance Paid to Insurance Company or Companies. Life $ N/A | | |
| Disability $ N/A | $ N/A | |
| **B** Other Optional Insurance Paid to Insurance Company or Companies | $ N/A | |
| **C** Optional Gap Contract | $ N/A | |
| **D** Official Fees Paid to Government Agencies | $ N/A | |
| **E** Government Taxes Not Included in Cash Price | $ N/A | |
| **F** Government License and/or Registration Fees N/A | | |
| REG-PSF / Lieu Fee / Postage Fee | $ 1577.28 | |
| **G** Government Certificate of Title Fees | $ 4.00 | |
| **H** Other Charges (Seller must identify who is paid and describe purpose) | | |
| to TOTAL CARE AUTO VSC for Ext Service Contract | $ 3588.00 | |
| to TOTAL CARE AUTO for TCA T&W | $ 1127.00 | |
| to N/A for N/A | $ N/A | |
| to TOTAL CARE AUTO for MAINT CONTRACT | $ 230.00 | |
| to LARRY MILLER DODGE for Tire Fee | $ 5.00 | |
| to TOTAL CARE AUTO for DRIVE PUR | $ 499.00 | |
| to TOTAL AUTO CARE for KEY REPLACEMENT | $ 700.00 | |
| to TOTAL CARE AUTO for VTA | $ 499.00 | |
| to TOTAL CARE AUTO for APPEARANCE PROTECTION | $ 1540.00 | |
| to TOTAL CARE AUTO for PAINTLESS DENT REPAIR | $ 700.00 | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 10469.28 (4) |
| **5** Amount Financed (3 + 4) | | $ 93522.58 (5) |

If the "Amount Financed" exceeds $58,300 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance".

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ N/A (Type of Insurance) N/A (Term)

Premium $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

☐ N/A (Type of Insurance) N/A (Term)

Premium $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A (Buyer Signature) N/A (Date)

X N/A (Co-Buyer Signature) N/A (Date)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS N/A

**Returned Check Charge:** You agree to pay a charge of $25.00, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A (Name of Gap Contract)

I want to buy a gap contract.

Buyer Signs X N/A

## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/365th of a year (or 1/366th in a leap year).

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.**
You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give us false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **Debtor's Liability for Failure to Return Vehicle:** If you are in default, we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1.5 years in prison and a $150,000 fine.

d. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.

e. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

f. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

g. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

h. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**5. SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**6. APPLICABLE LAW**
Federal law and the law of the state of Arizona apply to this contract.

## GUARANTY

The undersigned, jointly and severally, guarantee payment of all amounts owing under this contract and the payment upon demand of the entire amount owing on this contract in the event of default in payment by Buyer named therein. The undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 *et seq.* The undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

| | |
|---|---|
| N/A | N/A |
| DATED AT | GUARANTOR |
| N/A | N/A |
| DATED AT | GUARANTOR |

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor, and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

| | |
|---|---|
| N/A | N/A |
| Date | Spouse of the Guarantor |

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

☐ **IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO** N/A.

**NO COOLING OFF PERIOD**

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X ______ Co-Buyer Signs X ______
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**NOTICE TO THE BUYER: (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.**

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 4, BEFORE SIGNING BELOW.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

**ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**The Arizona Department of Insurance and Financial Institutions regulates the Seller and can be contacted at 100 N 15th Avenue, Suite 261, Phoenix, AZ 85007-2630, [redacted], if you have any complaints concerning this contract.**

| | | | |
|---|---|---|---|
| X ______ | 05/17/2021 | X ______ | 05/17/2021 |
| **Buyer Signs** | **Date** | **Co-Buyer Signs** | **Date** |
| ANTHONY MONTEZ | | DEANNA MARIE RUIZ | |
| **Buyer Printed Name** | | **Co-Buyer Printed Name** | |
| X LARRY MILLER DODGE | 05/17/2021 | By X ______ | BUSINESS MGR |
| **Seller Signs** | **Date** | | **Title** |

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A Title N/A

**SEE THE REST OF THIS CONTRACT FOR OTHER IMPORTANT TERMS AND AGREEMENTS.**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X N/A Date N/A Address N/A

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse

Seller

By X LARRY MILLER DODGE Title BUS MGR

# PDP ELECTRONIC TITLE DOCUMENT

ELT*AZ : ELT - ARIZONA
Title #: A004322578 Title Type :
Issue Date: 6/04/2021 Lic/Tag/Control #:

VIN . . . . . . . : 3C63RRPL6MG537343

Vehicle Info. . : 2021 RAM 3500 3500

Odometer Reading : 4265
Date . :
Status :

Owner Information . : ANTHONY MONTEZ
Co-Owner . . . . . . : DEANNA MARIE RUIZ

Owner address . . . : 42080 W ANNE LN

MARICOPA
AZ 851388637

Lienholder Information: ALLY FINANCIAL
PO BOX 8127

COCKEYSVILLE
MD 210308127

2nd Lienholder Name :

ELT Sent Date . . . . : 5/14/2021
Lien Type . . . . . . :
Owner Driver License# :

Brand code . . . . :

Release name . . . :
Release address 1 :
Rel City/State/Zip : ,

[redacted]

FILED
Rebecca Padilla
CLERK, SUPERIOR COURT
07/17/2023 11:16AM
BY: RPERRONE
DEPUTY

Ryan J. Lorenz - [redacted]
Daniel P. Thiel - [redacted]
**CLARK HILL PLC**
14850 N. Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: [redacted]
Facsimile:
Email:

*Attorneys for Plaintiff Ally Capital Corp.*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PINAL**

| | |
|---|---|
| ALLY CAPITAL CORP., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY MONTEZ and JANE DOE MONTEZ, husband and wife; DEANNA M. RUIZ and JOHN DOE RUIZ, wife and husband,<br><br>Defendants. | NO. [redacted]<br><br>**JUDGMENT**<br><br>(Assigned to Hon. Joseph R. Georgini) |

This matter came before the court on the Plaintiff's motion for summary judgment, filed May 3, 2023. The time has expired for the Defendants to respond, and pursuant to a request for summary disposition, filed July 5, 2023, the court treats the failure to respond as consent to granting the motion. Independently, the court finds that there are no disputed issues of material fact and that the Plaintiff is entitled to judgment as a matter of law. Specifically, the court finds that the Plaintiff holds a perfected purchase money security interest in and to that certain 2021 Ram 3500, VIN 3C63RRPL6MG537343 ("Vehicle") and is entitled to possession thereof as a consequence of the Defendants' breach of contract. Good cause appearing,

**IT IS ORDERED, ADJUDGED AND DECREED**, as follows:

The Court further enters the following judgment in favor of Plaintiff and against Defendant Anthony Montez ("Montez"):

A. Awarding Plaintiff the principal sum of $80,995.40, plus finance charges of $2,231.03, late charges of $534.70, and finance charges continuing to accrue at the rate of 6.59% per annum on the principal from December 29, 2022, until paid in full.

B. Directing Defendants to: 1) surrender or deliver the Vehicle to Plaintiff or its duly authorized representatives and/or agents; 2) provide Plaintiff with insurance information in the event the Vehicle is lost, stolen, or is a total loss from damage such that Plaintiff can make a claim on a policy of insurance for the same, if applicable; 3) recover the Vehicle from any third parties and to comply with highway and traffic laws in operating or delivering the Vehicle in accordance with this judgment, particularly laws requiring maintenance of minimum liability insurance coverage in the State of Arizona; and 4) directing Defendants to report the Vehicle as stolen, if the facts justify and warrant a probable cause belief that the Vehicle has been stolen or taken by a third party, and to cooperate with law enforcement and Plaintiff to locate and permit Plaintiff to recover the same or make an insurance claim as provided above.

C. This judgment resolves all claims against all parties. This judgment is entered as a final judgment pursuant to Ariz. R.Civ. P. 54(c).

eSigned by THE HON JOSEPH R GEORGINI, 07/17/2023 11:15:52 [redacted]

Attachment C

# LIMITED SPECIAL POWER OF ATTORNEY

Ally Financial Inc. ("Client") hereby grants to AIS Portfolio Services, LLC (formerly known as AIS Portfolio Services, LP, a Limited Partnership) whose principal office is located at 5847 San Felipe, Suite 12000 Houston, TX 77057, together with its affiliates, subsidiaries, directors, officers, and employees, (jointly "AIS") Power of Attorney for the purpose of servicing claims Client or any of its direct or indirect subsidiaries may have in cases being administered pursuant to the Federal Bankruptcy Code that are referred to AIS by Client. Client expressly authorizes AIS, or any of its employees, as attorney-in-fact for the undersigned, and with full power of substitution, to prepare and execute Proofs of Claims in bankruptcy proceedings under the United States Bankruptcy Code on behalf of Client or any of its direct or indirect subsidiaries. This Limited Special Power of Attorney is being given to AIS and may be attached to claims filed on Client's behalf as required by the Federal Rules of Bankruptcy Procedure and the Official Forms.

AIS shall indemnify, defend and hold harmless Client and its successors and assigns from and against any and all losses, costs, expenses (including, without limitation, actual attorney's fees), damages, liabilities, demands or claims of any kind whatsoever ("Claims"), arising out of, related to, or in connection with (i) any action taken by AIS pursuant to this Limited Special Power of Attorney, which act results in a Claim solely by virtue of the unlawful use of this Limited Special Power of Attorney (and not as a result of a Claim related to the underlying instrument with respect to which this Limited Special Power of Attorney has been used), or (ii) any use or misuse of this Limited Special Power of Attorney in any manner or by any person not expressly authorized hereby.

Third parties without actual notice may rely upon the power granted under this Limited Special Power of Attorney upon the exercise of such power of the Attorney in fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Special Power of Attorney has not been revoked.

This Limited Special Power of Attorney, and all authority granted hereunder, shall be in full force and effect until either (i) terminated in writing by Client: or (ii) without further action by Client, automatically upon the termination of the Bankruptcy Services Agreement.

Dated 11/2/2022,

By: [signature]
Name: Laura A. Fisher
Title: Director, Supply Chain

STATE OF NC )
COUNTRY OF Mecklenburg

Subscribed and sworn to (or affirmed) before me on this 2 day of November, 2022 by Laura Alston Fisher proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Khamla Sphabmixay
NOTARY PUBLIC
Mecklenburg County, NC
My Commission Expires July 27, 2025

Signature [signature]


Page 3 of 12

Exhibit 2

# JD Power Used Car Guide
# Vehicle Valuation

Print Date: April 8, 2026

---

Customer: MONTEZ, ANTHONY

File No.: ALLY-1646936

Vehicle Description: 2021 RAM Ram 3500 Pickup-I6 Crew Cab Tradesman 4WD

VIN: 3C63RRPL6MG537343

**Base Values**

Retail: $ 55096.00 Wholesale/Trade-in: $ 62343.00

**Optional Equipment/Adjustments**

Estimated Miles 58015 $ 0.00

**Total Adjusted JD Power used Car Guide Values**

Retail: $ 55096.00 Retail/Wholesale Average: $ 58719.50

Reference 12/2024



Acct #: XXXXXXXXXXXX4934/1646936

# Exhibit 2

# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

**CASE NO.:** 04:24-bk-09671-BMW

**IN RE:**
ANTHONY LEO MONTEZ,
Debtor,

**CHAPTER 13**

## REVISED PROPOSED STIPULATION TO RESOLVE OBJECTION TO CONFIRMATION

**Property Description:**
2021 Ram 3500 Mega Cab Limited Pickup
4D 6 1/3 ft. VIN: 3C63RRPL6MG537343

Ally Capital Corp. ("Creditor" or "Ally") and Anthony Leo Montez ("Debtor"), for purposes of compromise and consensual resolution of Creditor's Objection to Confirmation, hereby stipulate and agree as follows:

1. Creditor filed Proof of Claim No. 8 concerning the 2021 Ram 3500 Mega Cab Limited Pickup 4D 6 1/3 ft, VIN 3C63RRPL6MG537343 (the "Collateral").

2. On March 24, 2026, Debtor filed a Chapter 13 Plan at Docket No. 173 providing proposed treatment concerning Creditor's claim and the Collateral.

3. On April 13, 2026, Creditor filed its Objection to Confirmation at Docket No. 197.

4. The parties desire to resolve Creditor's Objection to Confirmation and establish consensual treatment of Creditor's claim upon the terms expressly stated herein.

**AGREED SECURED TREATMENT**

5. Solely for purposes of compromise and settlement, Creditor's secured treatment shall be based upon an amount not to exceed $45,000.00, subject to the accounting, reconciliation, payments, credits, and adjustments required by this Stipulation.

The amount ultimately payable shall be the reconciled amount established after application of all payments, adequate-protection payments, Plan distributions, credits, adjustments, recoveries, charge-offs, offsets, reversals, and other reductions properly attributable to the obligation, and in no event shall exceed $45,000.00.

Nothing herein establishes $45,000.00 as a minimum amount payable irrespective of the accounting and reconciliation required below.

6. Following the accounting and reconciliation required by this Stipulation, the reconciled secured settlement principal, and no greater amount, shall bear interest at a fixed rate of seven percent (7.00%) per annum under the agreed treatment.

7. Pending confirmation, Creditor shall receive adequate-protection payments of $300.00 per month.

All adequate-protection payments previously or subsequently received by Creditor and properly attributable to the obligation shall be credited dollar-for-dollar toward the amount payable under this Stipulation.

The $300.00 monthly adequate-protection payments are not in addition to the agreed secured settlement obligation and shall reduce the amount otherwise remaining payable.

No payment or credit shall be duplicated, separately capitalized, or recovered more than once.

**COMPLETE ACCOUNTING AND RECONCILIATION**

8. As a material term of this Stipulation, within twenty-one (21) days after entry of the Order approving this Stipulation, Creditor shall provide Debtor with a complete transactional accounting of the subject account from origination through the date of production.

The accounting shall identify, to the extent maintained within Creditor's possession, custody, or control:

a. the complete transactional ledger and payment history;

b. the date and amount of every payment received;

c. the application and allocation of each payment;

d. all principal reductions and interest entries;

e. all fees, costs, expenses, and other charges;

f. all credits, adjustments, reversals, recoveries, charge-offs, and other entries affecting the balance;

g. all adequate-protection payments and bankruptcy-related transactions;

h. all suspense or unapplied-payment activity;

i. all payoff calculations and balance reconciliations; and

j. the calculation and composition of the amount Creditor contends remains payable.

9. Within the same twenty-one (21)-day period, Creditor shall further provide the non-privileged account records, transactional records, electronically maintained account information, account notes, payment histories, calculations, reports, database entries, and other business records reviewed, considered, referenced, or relied upon by Ashley Graf in preparing or executing her declaration concerning Debtor's account.

The records produced shall be sufficient to identify and substantiate from Creditor's underlying business records:

a. the account balance relied upon by Ms. Graf;

b. the payment history relied upon by Ms. Graf;

c. the application of payments and credits;

d. the existence and amount of any asserted delinquency or default;

e. the principal, interest, fees, charges, credits, and adjustments included within the asserted indebtedness; and

f. the basis for the material account-related factual representations contained in the Graf Declaration.

10. The accounting and supporting records provided pursuant to Paragraphs 8 and 9 shall be sufficient to reconcile:

a. Creditor's underlying transactional account records;

b. Proof of Claim No. 8;

c. Creditor's Motion for Relief from Stay; and

d. the material account-related representations contained in the Ashley Graf Declaration.

Every payment, adequate-protection payment, Plan distribution, credit, adjustment, reversal, recovery, charge-off, offset, or other reduction properly attributable to the obligation shall be reflected and credited in that reconciliation.

Any discrepancy identified through the reconciliation shall be addressed and corrected as appropriate before determination of the final amount required to satisfy the agreed secured settlement obligation.

11. With respect to the Form 1099-C and Notice of Lien Release previously addressed by Creditor, Creditor shall provide the non-privileged records reviewed, considered, referenced, or relied upon in making its factual representations concerning those documents, together with non-privileged records reflecting any investigation undertaken concerning their origin, issuance, authorization, authenticity, or treatment in relation to the subject account.

Nothing in this Stipulation constitutes Debtor's acceptance or admission concerning Creditor's factual conclusions regarding either document.

**APPLICATION OF PAYMENTS AND CREDITS**

12. All payments, adequate-protection payments, Plan distributions, credits, adjustments, recoveries, charge-offs, offsets, reversals, and other amounts properly attributable to the obligation shall be fully applied in determining the remaining settlement obligation.

Creditor shall not obtain duplicate recovery of the same amount through adequate protection, Plan distributions, direct payments, unsecured distributions, capitalization, or otherwise.

**REGISTRATION AND USE OF COLLATERAL**

13. As a material term of this Stipulation, Creditor shall promptly take all actions within its possession or control necessary to remove or cause the removal of any Creditor-imposed registration hold, suspension, restriction, or other impediment preventing Debtor from registering, renewing the registration of, or lawfully operating the Collateral.

Creditor shall provide any authorization or documentation within its possession or control reasonably required by the Arizona Department of Transportation or Motor Vehicle Division for that purpose.

14. So long as Debtor performs the treatment established by this Stipulation and the confirmed Plan, Creditor shall not impose or cause the reimposition of a Creditor-controlled registration restriction based solely upon amounts being treated through the Stipulation or Plan.

**LIEN RELEASE AND PREPAYMENT**

15. Upon satisfaction of the reconciled secured settlement obligation, after application of all payments and credits required herein, Creditor shall promptly:

a. release its lien against the Collateral;

b. electronically transmit or otherwise provide the lien-release documentation reasonably required by Arizona MVD; and

c. take all actions within its control reasonably necessary to reflect satisfaction and release of the lien.

The lien release shall be based upon satisfaction of the settlement obligation established through this Stipulation and shall not be conditioned upon payment of any greater historical amount previously asserted by Creditor.

16. Debtor may prepay all or any portion of the reconciled secured settlement obligation at any time without prepayment penalty, premium, or additional charge arising solely from prepayment.

**FINAL CLAIM TREATMENT**

17. Upon completion of the treatment required by this Stipulation, Creditor's claim against Debtor arising from the subject obligation shall be deemed satisfied in full, and Creditor shall have no remaining unsecured deficiency claim against Debtor arising from that obligation.

**DEANNA MARIE RUIZ**

18. Deanna Marie Ruiz is not a party to this Stipulation and assumes no payment, performance, or other obligation under it.

As a material term of this compromise, Creditor agrees that it shall not seek or pursue any additional recovery against Deanna Marie Ruiz arising from the subject obligation.

Nothing contained herein constitutes an admission, acknowledgment, ratification, or adjudication by Debtor concerning any alleged liability of Deanna Marie Ruiz.

**RESOLUTION OF OBJECTION TO CONFIRMATION**

19. Upon approval of this Stipulation, Creditor's Objection to Confirmation at Docket No. 197 shall be deemed resolved, and Creditor shall withdraw the Objection or otherwise advise the Court that the Objection has been resolved.

Creditor shall not oppose confirmation based upon the valuation, interest rate, adequate protection, or claim treatment expressly established by this Stipulation, provided Debtor's Plan is consistent with the agreed treatment.

**RESERVATION OF RIGHTS**

20. This Stipulation resolves only those matters expressly and specifically addressed herein.

Nothing contained herein constitutes a general release or an admission concerning any matter not expressly resolved by this Stipulation.

21. Except for the specific matters expressly resolved herein, Debtor preserves all applicable claims, defenses, objections, offsets, recoupment rights, credits, accounting rights, discovery rights, statutory rights, consumer-protection rights, bankruptcy rights, and other rights and remedies available under applicable law.

22. Nothing in this Stipulation waives or releases any claim, defense, right, or remedy arising from:

a. subsequent conduct;

b. subsequent servicing or accounting activity;

c. breach or nonperformance of this Stipulation;

d. subsequently discovered records or facts; or

e. accounting discrepancies not expressly and finally resolved herein.

No waiver, release, relinquishment, or admission shall be implied beyond the matters expressly stated in this Stipulation.

**GENERAL PROVISIONS**

23. This Stipulation constitutes the parties' agreement concerning only the matters expressly identified herein and shall not be construed more broadly than necessary to effectuate those specific compromises.

24. Any modification of this Stipulation shall be in writing and agreed to by the parties, subject to Court approval where required.

25. This Stipulation shall become effective upon entry of an Order approving it and shall be implemented through Debtor's Chapter 13 Plan to the extent necessary.

Dated: August 10th, 2026.

Respectfully, Presented by:

/s/ Anthony Leo Montez
Anthony Leo Montez
Sui Juris, Beneficiary

Zdancewicz Law Firm, PLC
/s/ Michael Zdancewicz (012426)
Michael Zdancewicz
Attorney for Ally Capital Corp.
*With Written Permission.*

Certificate of Service

I certify that on September 7, 2026, a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the Court's ECF noticing system, if available, otherwise by regular first-class mail:

| | |
|---|---|
| Zdancewicz Law Firm, PLC<br>/s/ Michael Zdancewicz (012426)<br>Michael Zdancewicz<br>Attorney for Ally Capital Corp<br>**ECF** | Edward Maney<br>Chapter 13 Trustee<br>101 North First Avenue, Suite 1775<br>Phoenix, AZ 85003<br>**ECF** |
| United States Trustee<br>District of Arizona<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003<br>**ECF** | |

/s/ :Anthony-Leo: Montez.